2005 SD 39

**Jannelle CAIN, Plaintiff and Appellant,**

v.

**FORTIS INSURANCE COMPANY, Defendant and Appellee.**

**No. 23166.**

Supreme Court of South Dakota.

Argued Nov. 17, 2004.

Decided March 16, 2005.

N. Dean Nasser, Jr., Nasser Law Offices, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

Kristine Kreiter O'Connell, Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

ANDERSON, LEE D., Circuit Judge.

[¶ 1.] Jannelle Cain (Cain) appeals the circuit court's holding that Fortis Insurance Company (Fortis) did not breach its contract with Cain because gastric bypass surgery was excluded from coverage under her health insurance policy. We affirm.

## FACTS

[¶ 2.] Cain was diagnosed as morbidly obese and suffered from high blood pressure and degenerative joint disease. When other weight loss options were unsuccessful, Cain consulted a surgeon, Dr. O'Brien, about undergoing a treatment known as gastroplasty or gastric bypass surgery. Dr. O'Brien sent a preauthorization request letter to Fortis, Cain's insurance company.[1] Cain's insurance policy contained a weight treatment exclusion stating, "You are not covered for any treatment or regime, medical or surgical, for purpose of controlling your weight or for the treatment of obesity." Based on this language, Fortis determined that Cain was not entitled to coverage.

[¶ 3.] Despite the preauthorization denial, Cain underwent gastroplasty on November 19, 2001. The cost of the procedure was $20,329.87. Cain submitted a claim to Fortis for the cost of the gastric bypass surgery. Fortis again denied coverage for the surgery, indicating that any treatment for weight control or obesity was not a covered benefit. Cain asserted that the procedure was a medically necessary treatment for her musculoskeletal and cardiovascular problems and should be covered under the insurance policy.

[¶ 4.] The trial court determined that although the surgery was medically necessary to treat the conditions complicated by her weight, the terms of the insurance policy excluded coverage. Accordingly, the court held that Fortis did not breach its contract with Cain as it was not obligated to provide insurance coverage for the gastric bypass procedure. After a bench trial on December 30, 2003, the court entered judgment in favor of Fortis and

---

1. Cain had an individual South Dakota Standard policy of health insurance with Fortis. The effective date of Cain's policy was January 1, 1998. The policy was in effect at the time of the surgery.

awarded $1,037.28 in costs and disbursements.

[¶ 5.] Cain asserts the following issues on appeal:

Whether Cain's gastric bypass surgery was covered under the Fortis policy.

Whether it was unlawful discrimination to deny Cain necessary surgical care for a disease.

Whether the efficient proximate cause doctrine is applicable to health insurance policies.

Whether the trial court committed reversible error in refusing to consider Cain' offers of proof regarding insurance coverage for different medical treatments, and payment for gastric bypass surgery under other contracts.

Whether the trial court abused its discretion in entering judgment for the taxation of costs.

### STANDARD OF REVIEW

[¶ 6.] When interpreting insurance contracts, we have uniformly held them reviewable as a matter of law under the de novo standard. *De Smet Ins. Co. v. Gibson*, 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99; *Economic Aero Club, Inc. v. Avemco Ins. Co.*, 540 N.W.2d 644, 645 (S.D.1995); *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275 (S.D.1994). This includes determining whether an insurance contract is ambiguous. *Rogers v. Allied Mut. Ins. Co.*, 520 N.W.2d 614, 616 (S.D. 1994).

[¶ 7.] The decision to admit or refuse evidence is reviewed under the abuse of discretion standard. *State v. Smith*, 1999 SD 83, ¶ 39, 599 N.W.2d 344, 353. The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion. *State v. Rufener*, 392 N.W.2d 424, 426 (S.D.1986).

[¶ 8.] We also review a trial court's rulings on the allowance or disallowance of costs and attorney fees under an abuse of discretion standard. *Stratmeyer v. Engberg*, 2002 SD 91, ¶ 12, 649 N.W.2d 921, 925 (citing *Eccleston v. State Farm Mut. Auto. Ins. Co.*, 1998 SD 116, ¶ 20, 587 N.W.2d 580, 583; *Fullmer v. State Farm Ins. Co.*, 498 N.W.2d 357, 363 (S.D.1993)).

### ANALYSIS AND DECISION

#### ISSUE ONE

[¶ 9.] **Whether Cain's gastric bypass surgery was covered under the Fortis policy.**

[¶ 10.] Cain had an individual South Dakota Standard policy of health insurance with Fortis. The Division of Insurance regulates the Standard policy benefits and exceptions. One allowable exception or limitation under South Dakota's regulations is for weight modification. ARSD 20:06:39:26(9) permits a coverage limitation for:

Weight modification, including services, supplies, or treatment related to organized programs, treatment for obesity by diet drugs, any form of surgery or complications of surgery, and any exercise program or equipment[.]

The Fortis policy included such an exclusion for weight modification, stating:

Weight Control. You are not covered for any treatment or regimen, medical or surgical, for the purpose of controlling your weight or for the treatment of obesity.

[¶ 11.] Cain argues that the weight exclusion in the Fortis policy varied materially from the exclusions permitted in South Dakota in the Standard policy. In com-

paring the Fortis policy exclusion with the coverage limitations allowed under ARSD 20:06:39:26(9), we find that the exclusion was clearly in conformity with what is permitted under the South Dakota regulations.

[¶ 12.] Cain also contends that the Fortis insurance policy language was ambiguous. In its findings of fact and conclusions of law, the trial court determined that the purpose of Cain's gastric bypass surgical procedure was for the treatment of morbid obesity and that successful gastric bypass surgery was intended to produce weight loss. An anticipated result of the surgery and weight loss would have been improvement in Cain's medical problems which included high blood pressure and musculoskeletal pain.

[¶ 13.] The trial court held that the provisions of the Fortis policy were not ambiguous. It also concluded that the policy specifically excluded surgery undertaken for the purpose of treatment of obesity. Therefore, the trial court ruled the denial of coverage for the gastric bypass surgery was proper under the policy.

[¶ 14.] Cain argues that ambiguity existed in the Fortis policy because it failed to distinguish between or to define either "obesity" or "morbid obesity." Since Cain was diagnosed with morbid obesity rather than simple obesity, she asserts that the obesity treatment exclusion did not apply.

[¶ 15.]Recently, the District of Columbia Superior Court was confronted with the very same issue of whether the medical condition of obesity encompasses the medical condition of morbid obesity. *Flecha De Lima v. Int'l. Med. Group, Inc.*, No. 01CA6866, 2004 WL 2745654 at *4 (D.C.Super., Nov. 29, 2004). The *Flecha De Lima* court acknowledged, "the modification of the noun 'obesity' with the adjective 'morbid' indicates, for purposes of or-dinary speech, that 'morbid obesity' is a type of 'obesity,' just as 'rheumatoid arthritis' is naturally understood to be a type of 'arthritis,' and a 'migraine headache' is naturally understood to be a type of 'headache.' " *Id.*

[¶ 16.]This Court recognizes that descriptive terms such as "severe," "extreme," and "morbid" are often used to diagnose an individual's level of obesity. Accordingly, we find that the broad term obesity does include reference to more specific sub-categories such as morbid obesity.

[¶ 17.]Having reviewed the contract, we agree with the trial court that the policy was clear and unambiguous and that the gastric bypass surgical procedure was excluded under the policy. Although Cain was entitled to medically necessary services under the contract, every person's benefits under the standard policy were subject to the weight control treatment exclusion. It was irrelevant whether the gastric bypass was medically necessary treatment for her high blood pressure and musculoskeletal pain because the treatment was specifically excluded as a benefit not covered. "[A]n ambiguity is not of itself created simply because the parties differ as to the interpretation of the contract." *Johnson v. Johnson*, 291 N.W.2d 776, 778–79 (S.D.1980) (citations omitted). An unambiguous policy will be construed according to its plain and ordinary meaning, and will not be enlarged or diminished by judicial interpretation. *Am. Family Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 102 (S.D.1994). We conclude that the trial court did not err in construing the contract.

### ISSUE TWO

[¶ 18.] **Whether it was unlawful discrimination to deny Cain necessary surgical care for a disease.**

[¶ 19.] Cain maintains that she suffered from a life-threatening health condition and was entitled to receive insurance coverage for medically necessary treatment. Cain states that other non-obese policyholders were covered for medically necessary treatment for hypertension and for severe degenerative joint disease. However, due to her morbid obesity, Cain was disqualified from having her blood pressure and joint problems controlled by gastric bypass surgery. She contends that it was a violation of SDCL 58–33–26 to provide her with different benefits because she suffered from morbid obesity.

[¶ 20.] SDCL 58–33–26 states in pertinent part:

No insurer shall make or permit any unfair discrimination between insureds or property having like insuring or risk characteristics, in the premium or rates charged for insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the insurance.

Fortis insists that all standard plan policy holders were subject to the exact same coverage and exclusions as provided by law.

[¶ 21.] Cain's unlawful discrimination argument is not persuasive. "Discrimination" is defined as the "failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored." Black's Law Dictionary 467 (6th ed 1990). In this case, Cain has presented no evidence to suggest that she was denied surgical treatment for obesity while some favored class of persons was granted treatment for obesity. Therefore, we find that the Fortis policy did treat all policyholders the same. All individuals with a standard plan of insurance enjoyed the same coverage and exclusions mandated by South Dakota law.

[¶ 22.] Cain also raises ADA (Americans with Disabilities Act) and Title XIX claims for the first time in this appeal. Additionally, she claims that under SDCL 58–1–24, the discriminatory use of genetic information as a basis for exclusions is prohibited. Since these issues are raised for the first time on appeal, we need not consider them. State v. King, 400 N.W.2d 878, 880 (S.D.1987). For an appellate court to consider issues and make a decision on an incomplete record on questions raised before it for the first time would, in many instances, result in injustice, and for that reason courts ordinarily decline to review questions raised for the first time in the appellate court. Sharp v. Sharp, 422 N.W.2d 443, 445 (S.D.1988). This Court has often said that "[a]n issue not raised at the trial court level cannot be raised for the first time on appeal." Action Mech., Inc. v. Deadwood Historic, 2002 SD 121, ¶ 50, 652 N.W.2d 742, 755.

## ISSUE THREE

[¶ 23.] **Whether the efficient proximate cause doctrine is applicable to health insurance policies.**

[¶ 24.] Cain further claims that the doctrine of "efficient proximate cause" applied to permit coverage. Even if the gastric bypass surgery was excluded as a treatment for weight control, Cain insists that coverage should have still been afforded for hypertension and joint deterioration treatment as "efficient proximate causes" of her condition.

[¶ 25.] The doctrine of efficient proximate cause has been utilized in cases involving property and casualty insurance policies. It is applied "where two separate or distinct perils could have occurred independently of the other and caused damage." Capitol Indem. Corp. v. Evolution, Inc., 293 F.Supp.2d 1067, 1072 (D.N.D. 2003) (citing Pieper v. Commercial Under-

*writers Ins.*, 59 Cal.App.4th 1008, 69 Cal. Rptr.2d 551, 557 (1997)). Although this doctrine is utilized in cases involving property and casualty policies, there is almost no case law to support its application to health insurance policies. *See, e.g., Lummel v. National Fire Ins. Co. of Hartford, Conn.*, 50 S.D. 502, 210 N.W. 739 (1926) (applying the dominating efficient cause doctrine to an action on a fire policy covering truck which burned after going over embankment); *Garvey v. State Farm Fire and Casualty Co.*, 48 Cal.3d 395, 257 Cal. Rptr. 292, 770 P.2d 704 (1989) (discussing whether the included risk of negligent construction or the excluded risk of earth movement was the efficient proximate cause of the homeowner's loss). Cain cites only one Indiana case which discusses the issue in relation to health insurance coverage.

[¶ 26.] *In Rozek v. American Family Mut. Ins. Co.*, 512 N.E.2d 232 (Ind.Ct.App. 1987), the trial court's grant of summary judgment was reversed as the court noted that " 'which of the contributing causes is the efficient, dominant, proximate cause is a question to be submitted to the jury.' " *Id.* at 235 (quoting *Nationwide Mutual Insurance Co. v. Neville*, 434 N.E.2d 585, 591 (Ind.Ct.App.1982)). *Rozek* involved a health insurance policy exclusion for treatment of hypertension, its causes and complications. The central issue concerned whether removal of an adrenal gland tumor by surgery was an independent necessity where the gland was apparently the cause of hypertension in the patient. The Indiana court ruled that this issue involved an important factual determination which precluded the liberal use of summary judgment and held that "a discoverable, manifest or active, fundamental or basic cause of the hypertension is excludable under the policy, but a condition warranting independent corrective treatment is not." *Rozek*, 512 N.E.2d at 236.

[¶ 27.] The issues in the Indiana case distinguish it from the one before us. The doctrine of "efficient, dominant, proximate cause" was not applicable to alter the unambiguous language of the Fortis policy which excluded any treatment for the purpose of controlling weight or for obesity. We conclude that no South Dakota cases or any other cases cited by Cain lead us to believe that the efficient proximate cause doctrine was applicable here.

ISSUE FOUR

[¶ 28.] **Whether the trial court committed reversible error in refusing to consider Cain's offers of proof regarding insurance coverage for different medical treatments, and payment for gastric bypass surgery under other contracts.**

[¶ 29.] During trial, Cain first sought to introduce evidence concerning how insurance companies cover treatment for one medical condition, yet refuse payment for another set of symptoms. Next, Cain attempted to explore other health insurance policies issued by Fortis to insureds in other states. Cain asked whether Fortis had paid for gastric bypass surgery for other policyholders.

[¶ 30.] Fortis objected to Cain's line of questioning as being irrelevant to both the treatment of obesity and to the Fortis insurance policy in South Dakota. The trial court sustained Fortis' objections but permitted Cain to make offers of proof. The aforementioned offers of proof were received and rejected by the trial court as irrelevant. The court specifically ruled that other states' insurance policies were not relevant because they were "creatures of statute" and South Dakota's administrative rules delineate what can be included or excluded from a standard insurance policy in our state.

[¶31.] The trial court has broad discretion in admitting evidence. *Grode v. Grode*, 1996 SD 15, ¶16, 543 N.W.2d 795, 801 (citing *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D.1989)). "Evidence which is not relevant is not admissible." SDCL 19–12–2. A trial court's evidentiary rulings are presumptively correct. *Isaac v. State Farm Ins. Co.*, 522 N.W.2d 752, 762 (S.D.1994) (citing *Opp v. Nieuwsma*, 458 N.W.2d 352, 357 (S.D.1990)). This Court will only disturb decisions of the trial court regarding the admission of evidence if there is a clear abuse of discretion. *Jurgensen v. Smith*, 2000 SD 73, ¶18, 611 N.W.2d 439, 442. "An abuse of discretion has been defined as a decision that is not justified by, and is clearly against reason and evidence." *Id.* We find no abuse of discretion in the trial courts rulings based on lack of relevancy.

### ISSUE FIVE

[¶32.] **Whether the trial court abused its discretion in entering judgment for the taxation of costs.**

[¶33.] SDCL 15–6–54(d) requires that an application for costs and disbursements be made within thirty days of the entry of judgment. Failure to make timely application waives the right to such costs. *Id.* The procedure for objecting to the taxation of costs is also set forth in SDCL 15–6–54(d) which provides in part:

> A party who objects to any part of the application shall serve and file his objections with the clerk of court in writing *within ten days of the service of the application* on him or he will be deemed to have agreed to the taxation of the costs and disbursements proposed. The written objections must be accompanied by a notice of hearing thereon and shall set forth in concise language the reasons why the costs should not be allowed. (emphasis added).

[¶34.] The record indicates that no objection was filed within the ten day period under SDCL 15–6–54(d). On February 5, 2004, Fortis served Cain with its application for taxation of costs. Eighteen days later, Cain served written objections to the taxation of costs upon Fortis. The written objections were not accompanied by a notice of hearing. The trial court held that the ten day deadline for objecting under SDCL 15–6–54(d) was mandatory. Thus, the court ruled that Cain was deemed to have agreed to the taxation proposed in the application. Judgment was entered for costs on April 16, 2004. The trial court did not err or abuse its discretion in ruling that Cain did not follow the mandatory ten day deadline and was, therefore, deemed to have agreed to the taxation of costs proposed.

[¶35.] Affirmed.

[¶36.] ANDERSON, Circuit Judge, for SABERS, Justice, disqualified.

[¶37.] GILBERTSON, Chief Justice, KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.