#29784, #29787-a-MES
**2022 S.D. 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, | Plaintiff and Appellee, |
| v. | |
| BURJES FITCH, CHERYL FITCH, TRUETT FITCH, THEO FITCH, FITCH FARMS, BC FITCH PARTNERSHIP, | Defendants. |
| and | |
| HUNTER PETERSON, | Defendant and Appellant. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HAAKON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARGO D. NORTHRUP
Judge

\* \* \* \*

| | |
|---|---|
| MICHAEL J. MCGILL Beresford, South Dakota | |
| BRET C. MERKLE Sioux Falls, South Dakota | Attorneys for defendant and appellant. |
| TERRA M. LARSON MICHAEL F. SHAW of May, Adam, Gerdes & Thompson, LLP Pierre, South Dakota | Attorneys for plaintiff and appellee. |

\* \* \* \*

ARGUED
APRIL 26, 2022
OPINION FILED **06/15/22**

SALTER, Justice

[¶1.] Nationwide Agribusiness Insurance Company (Nationwide) sought a declaratory judgment regarding its duty to indemnify and defend Burjes and Cheryl Fitch against a personal injury lawsuit stemming from an accident that occurred on their farm. Nationwide contends that it has no such duty under the terms of the Fitches' farm liability insurance policy. The circuit court granted Nationwide's motion for summary judgment, and the injured party has appealed, arguing that the insurance policy provides coverage for his claim against the Fitches. We affirm.

## Facts and Procedural History

[¶2.] Burjes and Cheryl Fitch run a farm and cattle ranch in rural Haakon County. The operation is conducted with their two adult sons, Truett and Theo Fitch, and with the occasional assistance of their grandchildren. Nationwide issued a farm liability insurance policy (the Policy) for the Fitches' operation, which provided liability coverage for the Policy period of February 20, 2017 through February 20, 2018.

[¶3.] On August 13, 2017, Truett called his nephew Hunter Peterson, the grandson of Burjes and Cheryl, and asked if he was available to come to the farm and help spray weeds in one of the cattle pastures. Hunter, who was seventeen at the time, agreed to help and met Truett at the farm. Truett informed Hunter that he was to use a John Deere Gator utility-terrain vehicle equipped with a spray tank and hand wand, which would allow him to drive through the pasture and spray weeds while seated in the Gator. Truett showed Hunter how to operate the spray wand and identified the weeds he wanted Hunter to spray. Beyond this

information, however, Hunter claims Truett did not provide him with any additional training or direction.

[¶4.] The pasture in which Truett told Hunter to spray contained a creek with banks that Hunter described as "rugged, uneven terrain." At some point while spraying weeds along the creek, Hunter lost control of the Gator, which rolled over, trapping him underneath. The Gator pinned Hunter's legs to the ground rendering him unable to move or summon help. Hunter remained trapped for several hours before he was found. The accident resulted in permanent injuries to his legs.

[¶5.] On August 3, 2020, Hunter filed a personal injury action against Burjes, Cheryl, Truett, and Theo Fitch. The complaint also named as defendants two business entities owned by the Fitches—Fitch Farms and BC Fitch Limited Partnership—and alleged various negligence theories, including failing to train and supervise Hunter, failing to warn him of the uneven terrain, and failing to provide him with emergency communication equipment.

[¶6.] Nationwide initially engaged counsel for the Fitches and provided a defense, but it issued a reservation of rights letter detailing its conclusion that coverage for Hunter's injuries was excluded under the language of the Policy. Nationwide then commenced this declaratory judgment action to determine the extent of its obligation to defend or indemnify the Fitches.

[¶7.] Nationwide advanced three principal arguments in support of its denial of coverage. First, citing the Policy's broad definition of "employee," Nationwide claimed Hunter was an "employee" of the Fitches, a class of people whose claims are excluded under the Policy. Second, Nationwide also characterized

Hunter as a "farm employee," a distinct designation that resulted in exclusion from medical payments coverage. Finally, Nationwide argued that Hunter was an "insured" and, therefore, unable to seek damages under the Policy's liability coverage. Hunter resisted Nationwide's arguments and asserted that even if the Policy excluded his claim against the Fitches, his injury could still be covered under a theory known as the concurrent cause doctrine.[1]

[¶8.] The circuit court was not persuaded and granted summary judgment in favor of Nationwide. Although the court determined that there were disputed material facts regarding Hunter's status as an "employee," "farm employee," or "insured," the court relied upon its own reading of the Policy to conclude that the terms of an attached "Recreational Vehicle Liability Coverage Endorsement" (the Recreational Vehicle Endorsement) operated to exclude coverage for the Gator when it is "used for farming purposes."[2] The court also declined to apply the concurrent cause doctrine, reasoning that the negligence claims, ostensibly covered under the Policy, could not be separated from the exclusion eliminating coverage for incidents involving the use of the Gator for farming purposes.

[¶9.] Hunter appeals, acknowledging the use of the Gator is excluded under the Policy but challenging the circuit court's decision to not apply the concurrent

---

1. As explained more fully below, the concurrent cause doctrine may permit insurance coverage, notwithstanding a valid exclusion, where the loss, or part of it, is also attributable to a covered peril.

2. The Gator was listed on the Policy's schedule of recreational vehicles, and the parties have not litigated the question whether the Gator was, in fact, a recreational vehicle, either before the circuit court or on appeal. We make no separate determination in this regard.

cause doctrine. Though they opposed Nationwide's efforts to deny coverage before the circuit court, the Fitches have not participated in this appeal.[3]

## Standard of Review

[¶10.] We review the grant or denial of a motion for summary judgment de novo. *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 12, 873 N.W.2d 57, 61. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting SDCL 15-6-56(c)).

[¶11.] "Insurance contract interpretation is [also] a question of law, reviewable de novo." *Id.* ¶ 13, 873 N.W.2d at 61 (quoting *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 7, 822 N.W.2d 724, 726). "[T]he issue of whether the duty to defend or indemnify exists under a policy is particularly amenable to summary judgment." *Grovenburg v. Homestead Ins. Co.*, 183 F.3d 883, 885 (8th Cir. 1999) (citation omitted).

## Analysis and Decision

[¶12.] As a legal backdrop for our discussion, we offer some basic and germane principles of insurance law. An insurance company has a duty to defend "if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage." *Hawkeye-*

---

3. Nationwide sought review of the circuit court's determination that there were disputed issues of material fact surrounding Hunter's status as an "employee" or "farm employee." Given our disposition of the principal issue relating to the concurrent cause doctrine, however, it is unnecessary to reach the notice of review issues.

*Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 491 (S.D. 1985). In order to avoid a duty to defend, the insurer "must show the claim *clearly* falls outside of policy coverage." *Lowery Constr. & Concrete, LLC v. Owners Ins. Co.*, 2017 S.D. 53, ¶ 8, 901 N.W.2d 481, 484. Although not directly implicated by the issues presented here, our cases recognize that the duty to defend is independent and far broader than the duty to indemnify judgments or settlements. *N. Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992).

### Concurrent Cause Doctrine

[¶13.]     The parties agree that coverage for Hunter's injury is excluded under the provisions of the Recreational Vehicle Endorsement. *See Korzan*, 2015 S.D. 97, ¶ 26, 873 N.W.2d at 64 (citation omitted) ("Endorsements or riders on a policy become a part of the policy and must be construed with it."). The Recreational Vehicle Endorsement states that "[t]his insurance, including any duty we have to defend 'suits', does not apply to any 'recreational vehicle': . . . [w]hile being used for any 'business' or 'farming' purposes[.]"[4]

[¶14.]     Notwithstanding this exclusion, Hunter claims that his injury was the result of two independent and discernable causes—one a covered peril and the other not. Hunter concedes that at least a portion of his injury was the result of his use of the recreational vehicle and, therefore, excluded. However, he also contends that his injury was caused in part by the Fitches' negligence. Invoking what is commonly referred to as the concurrent cause doctrine, Hunter argues his claims against the Fitches should be covered by the Policy.

---

4.     It is undisputed that Hunter was using the Gator for "'farming' purposes[.]"

[¶15.]     Although courts differ in their precise formulations, the concurrent cause doctrine describes a theory used to obtain insurance coverage "where an injury was proximately caused by two events—even if one of these events was subject to an exclusion clause—if the differing allegations of causation are independent and distinct." *Am. Fam. Mut. Ins. Co. v. Parnell*, 478 S.W.3d 489, 492 (Mo. Ct. App. 2015) (internal quotations omitted). Where it applies, the rule generally states that "coverage should be permitted whenever two or more causes do appreciably contribute to the loss and at least one of the causes is a risk which is covered under the terms of the policy." 7 Couch on Ins. (3d ed.) § 101:55; *cf. Dallas Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 222 (Tex. App. 2015) ("Under the doctrine of concurrent causes, when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril.").[5]

---

5.     The concurrent cause doctrine is distinct from a related rule known as the "efficient proximate cause doctrine," which contemplates a sequence of causal events rather than two independent causes occurring at once. A leading treatise on insurance describes the efficient proximate cause doctrine in the following terms:

> The efficient proximate cause rule permits recovery under the insurance policy for a loss caused by a combination of a covered risk and an excluded risk only if the covered risk was the efficient proximate cause of the loss. The efficient proximate cause of the loss is the one that sets the other causes in motion that, in an unbroken sequence, produced the result for which recovery is sought.

7 Couch on Ins. (3d ed.) § 101:55 (footnote omitted). *See also Cain v. Fortis Ins. Co.*, 2005 S.D. 39, ¶ 25, 694 N.W.2d 709, 714 (discussing the efficient proximate cause doctrine). The parties have not asserted that the efficient proximate cause doctrine is implicated here, which is generally reserved for application to first-party coverage. *See* 7 Couch on Ins. (3d ed.) § 101:56.

[¶16.]     Though we have stopped short of expressly adopting the concurrent cause doctrine, we have discussed its operation in previous cases. *See, e.g.*, *Lummel v. Nat'l Fire Ins. Co. of Hartford, Conn.*, 50 S.D. 502, 210 N.W. 739, 742 (1926); *Korzan*, 2015 S.D. 97, ¶¶ 18–19, 873 N.W.2d at 62. Most notably, in *Korzan*, we explained that coverage is available under the doctrine only where the insured peril can be isolated and determined to be an independent cause of the loss. 2015 S.D. 97, ¶¶ 16–17, 873 N.W.2d at 62. Where, however, the concurrent acts are not distinct from each other, but rather are "inextricably intertwined[,]" the concurrent cause doctrine will not assist a claimant. *Id.* ¶ 19, 873 N.W.2d at 63.

[¶17.]     We further noted in *Korzan* that a court "may consider theoretical possibilities to explain how the accident could have occurred without [the excluded peril] in determining whether to apply the divisible, concurrent-cause doctrine. But if those possibilities are too remote, the doctrine will not be applied." *Id.* (quoting *Midwest Family Mut. Ins. Co. v. Schmitt*, 651 N.W.2d 843, 849 (Minn. Ct. App. 2002)).[6]

[¶18.]     A decision by the Supreme Court of Vermont animates these principles under factual circumstances similar to those present here. *See Mailhiot v. Nationwide Mut. Fire Ins. Co.*, 740 A.2d 360 (Vt. 1999). In *Mailhiot*, a thirteen-year-old boy was injured in an all-terrain vehicle (ATV) driven by his friend and

---

6.     Some jurisdictions also enforce "anti-concurrent cause provisions" in insurance policies, which preclude coverage even when the loss is caused in part by an insured peril. *See* Dale Joseph Gilsinger, Annotation, *Validity, Construction, and Application of Anticoncurrent Causation (ACC) Clauses in Insurance Policies*, 37 A.L.R. 6th 657 (2008). Here, however, Nationwide has not identified an anti-concurrent cause provision in the Policy.

owned by the friend's parents. *Id.* at 361. The injured boy's parents sued the friend's parents, who settled by assigning their rights under their homeowner's insurance policy to the plaintiffs. *Id.*

[¶19.] The homeowner's policy contained a coverage exclusion for "bodily injury or property damage arising out of the ownership, maintenance, or use of . . . a motor vehicle owned or operated by, or rented or loaned to an insured." *Id.* However, the plaintiffs claimed their son's injuries "were the result of two distinct causes: [the friend's] negligence in operating the motor vehicle (a risk . . . clearly excluded under the policy) and his parents' negligence in failing to adequately supervise the two children while they played." *Id.* After examining rules similar to those we have set out above, the court held the concurrent cause doctrine was inapplicable because "there is no way to separate the . . . alleged negligence in supervising [the boys] from the vehicle-related conduct because the ATV was the only possible object of their negligence." *Id.* at 362. The court concluded that "[i]t is impossible to separate the excluded conduct from any included conduct; therefore, the two causes are not independent of one another and cannot be said to be concurrent." *Id.* at 363.

[¶20.] The same is true here, and we conclude that even if we were to adopt the concurrent cause doctrine, it would not apply because the alleged acts of independent negligence by the Fitches are part and parcel of Hunter's use of the Gator. The two are, in the words of *Korzan*, "inextricably intertwined[.]" *See* 2015 S.D. 97, ¶ 19, 873 N.W.2d at 63. Indeed, we cannot conceive of even a theoretical possibility that Hunter's injuries could have occurred without his use of the Gator—

an expressly excluded peril. *Cf. State Farm Mut. Auto. Ins. Co. v. Partridge*, 514 P.2d 123, 129 (Cal. 1973) (holding that injuries arising from a gunshot inside of an insured's vehicle, though excluded by the "automobile use" exclusion of a homeowner's policy, were nevertheless covered because the insured's allegedly negligent act of altering the firearm was an independent concurrent cause).

[¶21.]     Under the circumstances, the circuit court did not err when it granted Nationwide's motion for summary judgment based on the language in the Recreational Vehicle Endorsement.[7]  We affirm.

[¶22.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

7.     Hunter also alleges the circuit court improperly engaged in fact-finding relating to the *tort* element of causation.  We disagree.  At issue here is the interpretation of an insurance contract and a common law insurance doctrine—legal questions which, when applied to the undisputed facts, are amenable to summary judgment.  Unlike causation assessments in tort, "the doctrine of proximate cause as applied in insurance law bears no relationship with the determination of 'culpability' or the explanation for why the injury took place.  Instead, insurance law employs the concept of proximate cause for purposes of determining whether the specific type of injury caused by the specific type of physical act or event was intended to be covered under the terms of the subject policy."  7 Couch on Ins. (3d ed.) § 101:40.  Here, the court did not determine the question of tort liability, and our decision likewise does not impact Hunter's negligence action against the Fitches.